UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT PAUL WEINBERG,<br><br>Plaintiff,<br><br>v.<br><br>NAGINA MANGAL, ANN GRAYBIEL, SALLY KORNBLUTH; MASSACHUSETTS INSTITUTE OF TECHNOLOGY, MIT CAMPUS POLICE DEPARTMENT; CRAIG MARTIN, KILLIAN CASEY, PANACHE FLINT, MICHAEL ALLEN; VINCENT DICIANNI, FERRITER SCOBBO AND RODOPHELE, P.C., CLAUDIA HUNTER, ROBERT STOLZBERG, PAULA LAZAR, AMY BANKS, STEN LOFGREN, JAMES C. BECK, SIMONS FOUNDATION AUTISM RESEARCH INITIATIVE, and CHDI FOUNDATION,<br><br>Defendants. | CIVIL ACTION<br>NO. 26-13362-WGY |

YOUNG, D.J. October 22, 2026

**MEMORANDUM OF DECISION**

Before the Court is the MIT Defendants'[1] motion to dismiss, ECF No. 10. This case has an unnecessarily complicated procedural history and posture that results in the MIT Defendants' motion to dismiss being granted primarily on the so-

[1] Nagina Mangal, Ann Graybiel ("Dr. Graybiel"), Sally Kornbluth, Massachusetts Institute of Technology, MIT Campus Police Department, Craig Martin, Killian Casey, Panache Flint, and Michael Allen.

called two dismissal rule, and for the other reasons stated below. Accordingly, the action as against the MIT Defendants, and the single count against the research foundation defendants, is hereby DISMISSED.

**I. BACKGROUND**

Almost a quarter-century ago, in 2002, the plaintiff, Robert Paul Weinberg ("Weinberg"), lost his license to practice medicine for an "unprofessional sexual relationship with a patient" in the 1990s, and for conduct during the course of the administrative disciplinary proceedings concerning those issues; specifically, a memorandum containing "threats made [to complaint counsel and the investigator] with the intent to obstruct the disciplinary proceedings against him." See Weinberg v. Bd. of Registration in Med., 443 Mass. 679, 682 (2005). The Massachusetts Supreme Judicial Court affirmed the administrative decision to revoke Weinberg's medical license. Id. at 691. The loss of his medical license has resulted in profound personal and professional repercussions, including denial to admission to the Maine Bar by the Maine Supreme Judicial Court. See Weinberg v. Bd. of Bar Exam'rs, No. BAR-11-14, 2012 Me. LEXIS 144, at *18 (May 7, 2012) (Gorman, J.) (denying Weinberg's admission to the Maine Bar upon concluding that he did "not have sufficient good character and fitness to practice law"). The subject matter of the lawsuit presently

before the Court stems from Weinberg's alleged loss of a visiting graduate student opportunity at MIT, some 20 years after the loss of his medical license.

### A. Facts Alleged in Weinberg's Current Action Against the MIT Defendants.[2]

#### 1. Weinberg Admitted to MIT as a Visting Graduate Student

Weinberg alleges that in September 2022 he was admitted as a visiting graduate student to defendant Dr. Graybiel's laboratory at the MIT McGovern Institute for Brain Research. Weinberg IV Am. Compl. ¶ 33. He claims to have paid a $4,000 fellowship fee to conduct doctoral research.[3] Id. "On or about April 5, 2023, Weinberg and Mangal, the latter acting on behalf of MIT, entered into a research collaboration concerning dopaminergic, cholinergic, and cannabinoid receptor signaling in the central nervous system and its role in neurodegenerative disease processes including Parkinson's disease, Alzheimer's disease, Huntington's disease, and ALS." Id. ¶ 34. Further,

[2] As the Court ruled at the September 28, 2026 hearing, the operative pleading in this action is ECF No. 22, hereinafter "the Weinberg IV Amended Complaint" or "Weinberg IV Am. Compl."

[3] Weinberg alleges that this research was partially funded by the Defendants Simons Foundation Autism Research Initiative ("SFARI") and CHDI Foundation ("CHDI"). Id. The only claim against these defendants fails inasmuch other than providing funding for Weinberg's fellowship, there are no plausibly pleaded allegations that would sustain Count IV as against them, and none different than those alleged as against the MIT Defendants. Accordingly, Count IV is dismissed as to SFARI and CHDI.

"Weinberg and Mangal began co-authoring a paper addressing the role of these receptor systems in astrocytes and neuroinflammation." Id. Weinberg claims that between April and June 2023, he "contributed to the conception of a novel research concerning cell-type specific modulation of receptor signaling in striatal indirect-pathway neurons as a strategy for treating Parkinson's disease and levodopa-induced dyskinesia, maintaining the confidentiality of that work on password-protected MIT Servers through his MIT Kerberos-authenticated account (rweinberg@mit.edu), and through work conducted off-network." Id. ¶ 35. For ease of reference, the Court refers to the above as the "Intellectual Property."

**2. Weinberg's Medical License Revocation is Discovered, MIT Terminates his Visting Graduate Student Status, and Denies Access to Files and Research**

This is where Weinberg claims his past caught up with him: by "mid-2023, Mangal discovered Weinberg's publicly listed 2002 license revocation through an internet search and disclosed it within the laboratory, including to Dr. Graybiel." Id. ¶ 36. "In mid-July 2023, Dr. Graybiel summarily terminated Weinberg's Visiting Student status and cut off his access to the laboratory's servers" and the Intellectual Property. Id.

Weinberg protested his treatment to "MIT President Sally Kornbluth and the U.S. Department of Education's Office for

Civil Rights." Id. ¶ 37. According to Weinberg, "[s]hortly afterward, MIT terminated his Kerberos network account, barred him from campus by no-trespass order, and denied access to his research files . . . precipitating his separate termination from his doctoral program at [the Massachusetts College Pharmacy and Health Services]." Id.

### 3. Weinberg is Detained by MIT Police for Violating No Trespass Order

Weinberg alleges that about a year later (and shortly after filing the original complaint in Weinberg I, see infra) "[o]n July 18, 2024, in the Ames Place Alley near Kendall Square, Cambridge, MIT Campus Police officers Killian Casey, Panache Flint, and Michael Allen, joined by Cambridge Police officers, surrounded Weinberg's vehicle while he sat waiting for his wife." Id. ¶ 38. According to Weinberg, "[t]he officers detained him for approximately forty minutes on pretextual grounds concerning his vehicle registration and license that the officers knew to be false, seized his license, and read him Miranda warnings." Id. Further, Weinberg alleges that "[d]uring the detention, officers made derogatory remarks referencing Weinberg's Jewish faith and suggesting he was responsible for anxieties expressed by Mangal." Id. ¶ 40. Weinberg concedes that no charges were ever filed. Id. The Court will refer to this as "the July 18, 2024 Incident."

Weinberg speculates "on information and belief" that this incident "was not an isolated act of individual officer misconduct but occurred in the context of, and served the purpose of, reinforcing Weinberg's continued exclusion from MIT property and from any opportunity to recover, inspect, or copy the research files and data . . . that remained on MIT-controlled servers and to which Weinberg's access had already been terminated the year before." Id.

**4. Weinberg's 2023 Denial of Access to the Intellectual Property and Purported Discovery of New Claims**

Weinberg alleges "on information and belief, MIT, Graybiel, Kornbluth, and Mangal have continued to access, use, and exercise control over" the Intellectual Property "after cutting off Weinberg's access to it, without his consent." Id. ¶ 41.

Weinberg alleges further that he has "had no access to the Graybiel Laboratory, its servers, or its personnel after mid-2023, and no visibility into the laboratory's subsequent publications or patent filings, because of the termination and no-trespass directive." Id. ¶ 43. In an attempt to avoid the two dismissal rule, Weinberg now claims that in June 2026, he "first learned that research substantially overlapping with the work [at issue] . . . had been published and patented without him." Id. ¶ 44. Weinberg refers to a single article first published in pre-print **January 2025** (while Weinberg II and III

were pending, see infra), and a patent application filed by Northwestern University (**not** MIT) researchers on January 16, 2026, and published on July 16, 2026. Id. ¶¶ 45-46.

### B. Procedural History of Weinberg's Three Prior Litigations - Weinberg I, II, and III[4]

The MIT Defendants, and this Court, are well familiar with the above-factual allegations other than the alleged late-discovery allegations. Indeed, Weinberg previously brought, and voluntarily dismissed, **three** other actions before this session of the Court in this district:

1. Weinberg v. Mangal et al., Civ. No. 1:24-cv-11606-WGY ("Weinberg I") (original action filed in federal court on June 24, 2024, amended on September 11, 2024, and voluntarily dismissed October 3, 2024);

2. Weinberg v. Wolfe et al., Civ No. 1:24-cv-13035-WGY ("Weinberg II") (original action filed in federal court on December 9, 2024, amended on January 28, 2025, and voluntarily dismissed February 26, 2025); and,

3. Weinberg v. Wolfe et al., Civ. No.1:24-cv-13044-WGY ("Weinberg III") (a removed action filed in Middlesex Superior Court, removed on December 9, 2024, and voluntarily dismissed February 26, 2025).

Pertinent here, in Weinberg I, on **June 24, 2024**, Weinberg filed a sprawling 1,788-page complaint that can only be described as a blunderbuss pleading of breathtaking scope against multiple defendants, including Mangal, Graybiel,

---

[4] The Court assigns Roman numerals to the Weinberg actions in order of the docket number.

Kornbluth, and MIT. See e.g. Weinberg I Compl. ¶¶ 1615-1661, 1719-1720; 1849-1978, 2812-2824, 8782-9043, ECF No. 1.

On **September 11, 2024**, Weinberg filed a 505-page Amended Complaint, including all of the MIT Defendants sued in the instant action, relating to, among other things: (1) his tenure and termination as a visiting student at MIT in 2022-2023, including that his work was intended to be used in papers and MIT would benefit from his intellectual property; and (2) his alleged mistreatment by MIT's police culminating in the July 18, 2024 Incident. Weinberg I Am. Compl. ¶¶ 891-1138, ECF No. 49. On **October 3, 2024**, Weinberg filed a notice of voluntary dismissal of Weinberg I. See Weinberg I, Notice of Voluntary Dismissal, ECF No. 84.

In Weinberg II, on **December 9, 2024**, Weinberg filed a 168-page complaint making similar claims. See Weinberg II Compl. ¶¶ 360-424, ECF No. 1. On **January 28, 2025**, Weinberg filed a 150-page Amended Complaint in which he made similar claims against the MIT Defendants as to the circumstances surrounding his termination as a visiting graduate student. See Weinberg II Am. Compl. ¶¶ 117-211, ECF No. 35.

In Weinberg III, on **November 26, 2024**, Weinberg filed a 181-page complaint in Middlesex Superior Court, that was removed to this Court by the MIT Defendants on **December 9, 2024**. See, e.g., Weinberg III Compl. at 1-182, ECF No. 2-3. This removed

action is largely duplicative of Weinberg II concerning the MIT Defendants as amended, but has more specific allegations concerning the Intellectual Property and the July 18, 2024 Incident. See, e.g., Weinberg III Compl. ¶¶ 401 - 466, 490, 493, 518-520, 527-533, 538-539, 540-542, 556-559, 576-579, 667-691, 698-700, 701-702, 706-708. The reasons for the apparent near duplication in federal court are irrelevant for purposes of the motion to dismiss; Weinberg voluntarily dismissed both Weinberg II and Weinberg III on **February 26, 2025,** which cover the allegations in the instant action.[5] See Weinberg II, Notice of Voluntary Dismissal, ECF No. 66; Weinberg III, Notice of Voluntary Dismissal, ECF No. 58.

### C. This Action -- Weinberg IV

#### 1. July 15, 2026 -- this Action is Filed in Superior Court and Then Removed to this Court by the MIT Defendants

On **July 15, 2026**, Weinberg filed a new action in Middlesex County Superior Court, styled Weinberg v. Healey et al., Civ.

[5] Weinberg explains that Weinberg II and Weinberg III are variations of the same underlying Superior Court case because he was attempting to accommodate the MIT Defendants and channel certain of his claims in federal court through his filing of Weinberg II, while the MIT Defendants had removed Weinberg III. See Pl.'s Post-Hr'g Suppl. Mem. Law Reply MIT Defs.' Mot. Dismiss at 6-9, ECF No. 82-1. The Court need not decide whether these actions are separate for purposes of the two-dismissal rule because, as the MIT Defendants point out, these actions constitute and act as at least a second dismissal. See MIT Defs.' Opp'n Pl.'s Mot. Leave File Post-Hr'g Suppl. Mem. at 1-2, ECF No. 83.

No. 26cv1878, which was removed to this Court on July 22, 2026. See Notice of Removal, ECF No. 1-3 ¶54 ("Weinberg IV Compl."). Though the complaint is relatively short -- 104 pages -- the Weinberg IV Complaint "re-allege[d] all factual allegations made in" Weinberg I, II, and III, among other actions. Weinberg IV Compl. ¶ 54 [1]-[8].

Weinberg alleged in this action that "all prior litigation was commenced by Weinberg in his individual capacity." Id. ¶ 55.

Why? Perhaps as a strategy to avoid the two-dismissal rule and at the same time stave off his partners who Weinberg alleges to have fleeced for over $300,000.

Other than a passing reference in the Weinberg I original complaint, see Weinberg I Compl. ¶¶ 6,812-6,813, **for the first time**, Weinberg in this action made reference to a non-party Massachusetts partnership, MicroBiogenix, of which Weinberg claims he is a partner.

The allegations in the Weinberg IV Complaint are confusing, but summarized here:

- MicroBiogenix is a partnership formed by Weinberg, Martin Stransky, Isabelle Mohel, and Maryann Cappuccio ("Cappuccio"). The terms of the partnership "included the pooling of assets, annual net earnings, and other forms of capital for the benefit of the Partnership and its partners." Weinberg IV Compl. ¶¶ 87, 233.

- Weinberg claims to have contributed approximately $40,000 per year until he lost his medical license in October

2002. After that point, he "began drawing large sums of money from the partnership without contributing any income to the partnership." Id. ¶ 235.

- "By 2006, Weinberg had withdrawn over $315,000 from the partnership's accounts and funds, in part drawing upon lines of credit established from the partnerships' assets." Id. ¶¶ 236-238. He claims to have appended an affidavit to the Weinberg IV Complaint as Appendix A "admit[ting] to the substantial monetary injuries he cause MicroBiogenix," but the Court is unable to locate that affidavit. ¶ 243. There are other conflicting claims as to the total amount that Weinberg withdrew. See id. ¶¶ 306-312.

- Although Weinberg has never made claims in this Court on behalf of MicroBiogenix or in a representative capacity before, Weinberg claimed in the original complaint "to have prosecuted litigation against MicroBiogenix's tortfeasors, licensors, and debtors without the knowledge or consent of the General Partners." Id. ¶ 241. One of those actions he claims was Weinberg I. Id. ¶ 279 ("On June 24, 2024, Weinberg filed a federal civil rights action in the United States District Court captioned 'Weinberg v. Mangal et al.' USDC No. 1:24-cv-11606; this suit was filed without the knowledge or consent of the partners of MicroBiogenix, in spite of the fact that multiple claims and damages were directly related to the partnership's assets.").

- Weinberg referred to MicroBiogenix as a co-plaintiff or plaintiff. See id. ¶289 ("With the ongoing constitutional and civil rights violations persisting, and the absolute cumulative partner damages exceeding $6M, the instant action is filed where Weinberg is both a co-plaintiff and a co-defendant for distinct and separate causes of action and relief sought by either the General Partnership MicroBiogenix (Weinberg as co-defendant) or the pair of Weinberg and the partnership (co-plaintiffs)."); ¶ 311 ("Plaintiff MicroBiogenix has suffered economic damages in excess of $3,000,000 from the loss of Plaintiff Weinberg's earnings, and more than $2,500,000 in additional compensatory and economic injuries, resulting from the conduct described above"), ¶ 530; ¶¶ 535-537 (damages sought on behalf of MicroBiogenix), and at p. 92 ("WHEREFORE, Plaintiff Robert P. Weinberg, D.O., and Plaintiff MicroBiogenix

> respectfully request that this Court enter judgment in their favor and against the Defendants, and grant the following relief:").

To be sure, Weinberg is the **only** plaintiff in this action, and is not identified as a defendant **anywhere** in this action. While Weinberg asserted in the original complaint in this action that MicroBiogenix is a "plaintiff", he then made this statement towards the end of the complaint:

> [Weinberg] notes for the Court's attention that MicroBiogenix's damages claim, while pled in the Statement of Facts, does not presently correspond to a captioned Count naming MicroBiogenix as a claimant; this paragraph is included to preserve that claim, and the Causes of Action should be amended to add a corresponding Count (for example, a loss-of-consortium style derivative claim on behalf of the partnership, or a direct claim for tortious interference with the partnership's economic interests) before this pleading is filed.

Weinberg IV Compl. ¶536. This is contradictory, nonsensical pleading. In any event, Weinberg cannot act on behalf of MicroBiogenix, see Local Rule 83.5.5(c), and MicroBiogenix has never been a plaintiff in this, or any action, before this Court.

**2. The MIT Defendants Moved to Dismiss this Action**

On **July 28, 2026**, the MIT Defendants' filed their motion to dismiss, MIT Defs.' Mot. Dismiss, ECF No. 10, along with a memorandum of law in support, Mem. Support MIT Defs.' Mot. Dismiss, ECF No. 11, arguing primarily that the claims raised

were barred by the two-dismissal rule and that the complaint was neither a short nor plain statement in conformity with Rule 8 of the Federal Rules of Civil Procedure. Id.

**3. August 4, 2026 - Weinberg's Partner, Maryann Cappuccio on behalf of herself and Principal, MicroBiogenix, a General Partnership, Moves To Intervene Concurrently with Weinberg's Motion to Sever, Claiming Ownership of the Intellectual Property**

On **August 4, 2025** Cappuccio filed a motion to intervene in her capacity a general partner of MicroBiogenix, claiming ownership of the Intellectual Property by assignment. Cappucio's Mot. Intervene, ECF No. 23.

That same day, Weinberg moved to sever certain claims, Pl.'s Mot. Sever Claims, ECF No. 19, and remand them back to Middlesex Superior Court, along with a two-part amended complaint (including Weinberg IV Am. Compl.), filed in anticipation of his motion for severance being allowed. See ECF Nos. 21 and 22.[6]

As part of the Weinberg IV Amended Complaint, **for the first time**, Weinberg revealed that he had **assigned the Intellectual Property to MicroBiogenix, referencing the motion to intervene:**

[6] Weinberg made much of the docketing of these documents, see ECF Nos. 28, 34, 42, 45, and the Court need not recite the subsequent procedural history in detail which includes, among other things, a further amended complaint, see ECF No. 25, which was purportedly withdrawn, see ECF No. 44. In the end, the document at ECF No. 22 is the operative complaint.

> Plaintiff's claims are related to, and Plaintiff anticipates coordination with, the claims of proposed Intervenor-Plaintiff Maryann Cappuccio, individually and as a general partner of MicroBiogenix, who has separately moved to intervene in this action to assert **MicroBiogenix's own ownership interest, as undisclosed principal and assignee, in the research and intellectual property described below.**"

Weinberg IV Am. Compl. ¶ 4 (emphasis added).[7]

The timing of the proposed intervention, Weinberg's admission of depleting funds from MicroBiogenix, and his further claim of assignment of the Intellectual Property to it is peculiar, but appears to be nothing more than a specious parry to the MIT Defendants' motion to dismiss.

In any event, expanding on the operative complaint here, Weinberg acknowledges "overlap" between this action and Weinberg I, II, and III, see Weinberg IV Am. Compl. ¶ 3, but claims that this action is somehow different based solely upon the timing of the claims. Weinberg brings three groups of counts as to the MIT Defendants.

The first group is delineated the "Intellectual Property Claims": Count I (Misappropriation of Trade Secrets under the Massachusetts Uniform Trade Secrets Act, Mass. Gen. Laws. ch. 93, §§ 42-42G, and Defend Trade Secrets Act, 18 U.S.C. § 1836); Count II (Correction of Inventorship under 35 U.S.C. § 256);

[7] In this current operative pleading Weinberg proceeds only in his individual capacity. See Weinberg IV Amend. Compl. ¶ 4.

Count III (Conversion); Count IV (Unjust Enrichment); Count V (Breach of the Implied Warranty of Good Faith and Fair Dealing); Count VI (Breach of Confidence); Count VII (Declaratory Judgment - Ownership of Research and Intellectual Property); Count VIII (Accounting).

The second group concerns Weinberg's alleged mistreatment by the MIT Police, delineated the "July 18, 2024 Detention and Related Claims" relating to the July 18, 2024 Incident: Count IX (Fase Imprisonment and False Arrest); Count X (Malicious Prosecution and Abuse of Process); Count XI (Section 1983 - Fourth Amendment); Count XII (Intentional and Negligent Infliction of Emotional Distress); Count XIII (Violation of Mass. Gen. Lasw ch. 12, §§11H-11I); Count XIV (Negligent Training and Supervision).

Finally, as to the MIT Defendants generally, Weinberg brings two other Counts delineated "Other MIT Claims": Count XV (Defamation, Libel, and Slander); and Count XVI (Tortious Interference with Contractual Relations and Prospective Economic Advantage).

**D. The MIT Defendants' Motion to Strike**

On **August 25, 2026**, the MIT Defendants filed a motion to strike ECF No. 22 along with memorandum of law in support, which among other things, incorporated their motion to dismiss. MIT Defs.' Mot. Strike Pl.'s Am. Compls. or Dism., ECF No. 58; Mem.

Supp. MIT Defs.' Mot. Strike Pl.'s Am. Compls. or Dism., ECF No. 59. The motion is opposed. See Opp'n, ECF No. 65.

On **September 28, 2026**, the Court held a hearing as to a number of issues, including the motion to dismiss. See Electronic Notice, ECF No. 79; Elec. Clerk's Notes, ECF No. 83. The Court sua sponte recused itself from so much of the action that pertained to ECF No. 21, and severed that portion of the action and relevant filings. See Electronic Clerk's Notes, ECF No. 83.[8] At the hearing, the Court ruled that the operative complaint in this action is now ECF No. 22, and after argument granted the motion to dismiss in part as to all claims against the MIT Defendants (though to be thorough it explains and expands upon that reasoning here) other than with respect to the Intellectual Property Counts as to the purported new claims, which it took under advisement.

On **October 6, 2026**, Weinberg filed a post-hearing brief. See Pl.'s Post-Hr'g Reply Br., ECF No. 85. On **October 14, 2026**, the MIT Defendants submitted a response to that post-hearing brief. See MIT Defs.' Resp. to Pl.'s Post-Hr'g Suppl. Mem., ECF No. 88.

---

[8] That severed action is styled Weinberg v. Healey et al., Civ. No. 1:26-cv-14531-LTS, proceeding before Judge Sorokin.

On **October 15, 2026**, Cappuccio filed a **second** motion to intervene. See Cappuccio's Mot. Intervene ("Cappucio's Second Motion to Intervene"), ECF No. 89.[9]

## II. ANALYSIS

With the exception of a patent naming claim which is premature, Weinberg's claims against the MIT Defendants are barred by the two dismissal rule, or alternatively, he has pleaded himself out of the claims by alleging assignment to MicroBiogenix of his interest in the Intellectual Property.

### A. The July 18, 2024 Incident Claims are Barred by the Two Dismissal Rule

Pursuant to Rule 41 of the Federal Rules of Civil Procedure, a plaintiff can voluntarily dismiss a civil action without prejudice only once.[10] "Whether by right, stipulation,

---

[9] Cappuccio's second motion to intervene, among other things, alleges in addition to MicroBiogenix's ownership of the Intellectual Property that Weinberg straight-up "convert[ed]" MicroBiogenix's assets (as a partner) to his own use. See Prop. Intervenor Compl. ¶ 26, ECF No. 89-2 ("Without authorization or partnership consent, Defendant Weinberg withdrew and retained over $275,000 from partnership funds, directly absorbing Cappuccio's $85,000 capital contribution without repayment or accounting"), ¶ 70 (seeking claims against Weinberg for breaches of "fiduciary duties of loyalty, utmost good faith, and candor by converting partnership capital for personal use").

[10] Rule 41(a)(1) provides in pertinent part that a "plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment" and that "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." Fed. R. Civ. P. 41(a)(1)(A)(i) & (B).

or leave of the court, a voluntary dismissal under Rule 41(a) is 'without prejudice' unless otherwise indicated, although a second voluntary dismissal as of right or by stipulation 'operates as an adjudication on the merits.'" Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 189 F.4th 60, 65 (1st Cir. 2026) (quoting Fed. R. Civ. P. 41(a)(1)(B) & (2)). Thus, a third -- or here, perhaps a fourth -- civil action on the same claim (or a claim that could have been brought) is barred by the two dismissal rule under principles of res judicata or claim preclusion. Inasmuch as Weinberg I, Weinberg II, and Weinberg III are federal actions, "[f]ederal claim preclusion law applies to determine the preclusive effect" of those [dismissals]." Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 14 (1st Cir. 2010).

The federal principle of "claim preclusion serves at least two important interests: protecting litigants against gamesmanship and the added litigation costs of claim-splitting, and preventing scarce judicial resources from being squandered in unnecessary litigation." Airframe Sys., Inc., 601 F.3d at 14. "Those interests are especially implicated in a case like this, where the plaintiff had every opportunity to fully litigate its various claims against the full range of defendants in an earlier suit and made the strategic choice not to do so." Id. Indeed, Weinberg "cannot obtain a second chance at a

different outcome by bringing related claims against closely related defendants at a later date." Id. Simply put, "[t]he doctrine of claim preclusion 'requires [a party] to live with [its strategic] choices.'" Ecolab Inc. v. IBA, Inc., 810 F. Supp. 3d 183, 192 (D. Mass. 2025) (Guzman, J.) (quoting Airframe Sys., Inc., 601 F.3d at 11).

The claim bar is broad: "federal claim preclusion law bars parties from relitigating claims that could have been made in an earlier suit, not just claims that were actually made." Airframe Sys., Inc., 601 F.3d at 14.

Under federal principles of claim preclusion, Weinberg's claims are barred if there is: "(1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits." Foss v. Eastern States Exposition, 67 F.4th 462, 466 (1st Cir. 2023).

The elements of final judgment and identity of parties is not in dispute here.[11] As for the cause-of-action element, the First Circuit relies upon a "transactional approach." Silva v. City of New Bedford, 660 F.3d 76, 79 (1st Cir. 2011) (quoting

---

[11] See Weinberg I Am. Compl. ¶¶ 10-11, 16-17, 23-27; Weinberg II Am. Compl. ¶¶ 51-59; Weinberg III Compl. ¶¶ 16-17, 22, 26-30; Weinberg IV Am. Compl. ¶¶ 10-18.

Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 38 (1st Cir. 1998)). As the First Circuit holds, "[t]he transactional approach does not focus on the labels or sources for the plaintiff's causes of action but instead considers whether the underlying factual bases for the causes 'are related in time, space, origin or motivation....'" Id. (quoting Airframe, 601 F.3d at 15). More specifically, the First Circuit "will find the required relationship if both sets of claims -- those asserted in the earlier action and those asserted in the subsequent action -- derive from a common nucleus of operative facts." Silva, 660 F.3d at 79.

Weinberg's claims concerning the July 18, 2024 Incident are barred and are DISMISSED with PREJUDICE. Weinberg's claims concerning the MIT Defendants' actions purportedly culminating in a July 18, 2024 Incident were alleged in extensive detail under several theories of liability, and voluntarily dismissed, in Weinberg I (see, e.g., Weinberg I Am. Compl. ¶¶ 1, 940-971; 988-1082, 808, 813-954(sic out of order numbering); Weinberg II (see, e.g., Weinberg II Am. Compl. ¶¶ 171 - 211); and Weinberg III (see, e.g., Weinberg III Compl. ¶¶ 423-440). While Weinberg now claims, on information and belief, a different **motivation** for the MIT Police Defendants' purported misconduct -- now, apparently, to deprive Weinberg access to the Intellectual

Property -- the motivational theory even if plausibly pleaded does not resurrect his claims.

Accordingly, Count IX (False Imprisonment and False Arrest); Count X (Malicious Prosecution and Abuse of Process); Count XI (Section 1983 - Fourth Amendment); Count XII (Intentional Infliction of Emotional Distress)[12]; Count XIII (Violation of Mass. Gen. Laws ch. 12, §§11H-11I); Count XIV (Negligent Training and Supervision) are DISMISSED with PREJUDICE.

**B. The Intellectual Property Claims Are Dismissed**

The Intellectual Property Claims are dismissed in their entirety as to the MIT Defendants, but for different reasons. The Correction of Inventorship Count is premature as there is no allegation that a patent has been issued, and there is no allegation that any of the MIT Defendants would be an inventor

[12] Count XII is DISMISSED with PREJUDICE as to Weinberg. To the extent Weinberg purports to bring Count XII on behalf of his spouse, he cannot do so as a <u>pro se</u> party. <u>See</u> L.R. 83.5.5(b) ("An individual appearing pro se may not represent any other party and may not authorize any other individual who is not a member of the bar of this district to appear on his or her behalf"). She is also not a plaintiff in this action. Weinberg's spouse, Vera Koledova ("Koledova") filed a motion to intervene to be added as a <u>pro se</u> plaintiff in this action. <u>See</u> Prop. Intervenor Vera Koledva's Mot. Intervene Pursuant to Fed. R. Civ. P. 24(a) and (b), with Mem. Supp., Prop. Compl. in Intervention, ECF No. 50. Subsequently, Koledova filed a Notice of Withdrawal of the Motion to Intervene, ECF No. 57. Koledova's motion to intervene, ECF No. 50, is therefore WITHDRAWN.

on such a patent. As for the remaining Intellectual Property Claims they are barred by the two dismissal rule, and in the alternative, Weinberg pleaded himself out of the claims by alleging an assignment of his rights with respect to the Intellectual Property to MicroBiogenix.

### 1. Correction of Inventorship, 18 U.S.C. § 256 (Count II) not Plausibly Pleaded

As an initial matter, Count II, Correction of Inventorship, 18 U.S.C. § 256, fails inasmuch as there is no plausibly pleaded allegation that a patent has yet issued. Pursuant to Section 256(a), "whenever ... through error an inventor is not named in **an issued patent**, the Director may, on application of all parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error." Id. (emphasis added). Pursuant to Section 256(b), this Court "may order correction of the patent on notice and hearing of all parties concerned[.]" 35 U.S.C. § 256(b). "'A § 256 claim for correction of inventorship does not accrue until the patent issues…'" Dana-Farber Cancer Inst., Inc. v. Ono Pharm. Co., Ltd., 379 F. Supp. 3d 53, 101 (D. Mass. 2019) (Saris, J.), aff'd, 964 F.3d 1365 (Fed. Cir. 2020) (quoting Hor v. Chu, 699 F.3d 1331, 1335 (Fed. Cir. 2012)); see Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 65 (1st Cir. 2009) (describing Section 256 action as

proceeding after patent issuance); St.-Gobain Ceramics & Plastics, Inc. v. Wang, No. CIV. A. 07-40129-FDS, 2008 WL 2756873, at *3 (D. Mass. June 27, 2008) (Saylor, J.) (Section 256 "explicitly contemplates a role for the federal courts in hearing inventorship disputes concerning issued patents"). Here, there is no allegation that the purported patent has issued. See Am. Compl. ¶ 53 (identifying only the patent application and seeking correction of the application "or any resulting patent"). Accordingly, Count II is DISMISSED without prejudice as to the MIT Defendants.

### 2. The Two Dismissal Rule Bars the Remaining Intellectual Property Counts

Weinberg asserts that claim preclusion does not apply because, since those lawsuits were voluntarily dismissed, he has located a research paper published at the earliest in **January 2025**, Am. Compl. ¶ 45, and a patent application has been made by scientists at Northwestern University on **January 16, 2026**. Am. Compl. ¶ 46. Weinberg argued this at the hearing, and the Court so-limited the claims, subject to the motion to dismiss, as to these purported "later" claims.

In this action, Weinberg alleges, once again, that "the Massachusetts Institute of Technology's and its affiliated researchers' theft and continued exploitation of intellectual property Weinberg conceived and developed during his research

collaboration with Defendant Nagina Mangal." Am. Compl. ¶ 1. He further broadly claims that the MIT Defendants:

> terminate[d] Weinberg's access to a research program in which he had a genuine and substantial inventive stake, cutting him off from the evidence of that stake through a baseless detention, and then continuing to develop, publish, and patent the resulting work without him. Weinberg did not learn the scope of that continued exploitation until he discovered, in or about June 2026, the peer-reviewed publication and patent application . . . discoveries that post-date every action Weinberg previously filed and dismissed.

Id. ¶ 2.

Weinberg's claims concerning, among other things, his termination and lack of access to his research and files, and retention of intellectual property were clearly made in Weinberg I. See, e.g., Weinberg I Am. Compl. ¶¶ 947, 976, 1106 ("despite the termination, the MIT Defendants . . . retained and continued to benefit from the research and intellectual property [Weinberg] . . . had produced during his aggregated ten (10) months of work"), 1107-1138. Similar claims were made in Weinberg II but not as to the retention and conversion of the Intellectual Property (though they could have been made). See Am. Compl. ¶¶ 117-170. Similar claims as to Weinberg I were made in Weinberg III. See e.g. Weinberg III Compl. ¶ 401-404, 413-418, 422, 441-450, 451 ("The MIT Defendants retained the research data and intellectual property generated by Plaintiff"), 452-466, 532-533, 540-542, 576-578, 579

("Defendants wrongfully converted Plaintiff's property by: A) Retaining Plaintiff's research data B) Refusing access to intellectual property C) Exercising unauthorized control D) Depriving Plaintiff of property rights E) Causing damages through wrongful retention"), 683-691.

The Court rules that under the "transactional approach", the claims are all "'related in time, space, origin or motivation" and derive from a common nucleus of operative fact. Silva, 660 F.3d at 79 (quoting Airframe, 601 F.3d at 15). That is, they stem from Weinberg's consistent allegations through all of his actions that in 2023 MIT purportedly stole the Intellectual Property when he was terminated as a visiting graduate student in June 2023. It is, of course, correct that "res judicata will not attach if the claim asserted in the second suit could not have been asserted in the first." Massachusetts Sch. of L. at Andover, Inc. v. Am. B. Ass'n, 142 F.3d 26, 38 (1st Cir. 1998); see also Am. Cyanamid Co. v. Capuano, 381 F.3d 6, 17 (1st Cir. 2004). Nevertheless, Weinberg could have -- and should have -- litigated his claims of alleged intellectual property theft, but chose at least twice to voluntarily dismiss those related claims. At best, Weinberg has "discovered" confirmatory evidence that the MIT Defendants did exactly what Weinberg has claimed all along. "Put another way, 'as long as the new complaint grows out of the same transaction

or series of connected transactions as the old complaint, the causes of action are considered to be identical.'" Haag v. U.S., 589 F.3d 43, 46 (1st Cir. 2009) (quoting Kale v. Combined Ins. Co., 924 F.2d 1161, 1166 (1st Cir.1991) (internal quotation marks and citations omitted)).

So it is here. Weinberg has thrice-before sued the MIT Defendants on this basic claim. Repackaging the Intellectual Property theft claims as somehow new when that purported stolen property thereafter purportedly shows up in an article first available prior to the dismissal of Weinberg II and Weinberg III, and a subsequent patent application by **others** months after the dismissal of the most recent lawsuit is a nonstarter, and not plausibly pleaded in any event. See MIT Defs.' Resp. Pl.'s Post-Hr'g Suppl. Mem. at 2.

In sum, Weinberg's fight with MIT about its purported 2023 theft and continued use of his Intellectual Property is a ship that has sailed due to Weinberg's apparent improvident litigation decisions.

### 3. In the alternative, with the exception of the Correction Claim, Weinberg has Pleaded Himself Out of his Intellectual Property Claims

Even if, arguendo, some of Weinberg's Intellectual Property Claims **could** survive the two-dismissal rule, he has in the alternative nevertheless pleaded himself out of those claims. Specifically, Weinberg alleges in the Weinberg IV Amended

Complaint, for the first time, that he **assigned** his ownership interests in the intellectual property to an undisclosed general partnership, MicroBiogenix:

> [Weinberg's] claims are related to, and [Weinberg] anticipates coordination with, the claims of proposed Intervenor-Plaintiff Maryann Cappuccio, individually and as a general partner of MicroBiogenix, who has separately moved to intervene in this action to assert **MicroBiogenix's own ownership interest, as undisclosed principal and assignee, in the research and intellectual property described below.**"

Weinberg IV Am. Compl. ¶4 (emphasis added).[13] All of Weinberg's personal claims concerning misappropriation of intellectual

---

[13] Weinberg's new revelation of his purported **assignment** of his rights in the Intellectual Property to MicroBiogenix raises concerns about Weinberg's compliance with his Rule 11 obligations, inasmuch as he has ostensibly at all times been aware that he assigned his rights in the Intellectual Property to MicroBiogenix, but has never before pleaded his assignment. In fact, Weinberg now complains in his Rule 26(f) Report and Proposed Scheduling Order, ECF No. 90, filed on October 19, 2026, that MIT's counsel has questioned him "about the MicroBiogenix partnership, about the complaint in intervention recently filed by proposed intervenor Maryann Cappuccio, and about the IP assignment agreement between [Weinberg] and MicroBiogenix." Id. at 5. Weinberg claims that MIT's counsel deduced from Weinberg's silence to its questions, that: (1) Weinberg drafted the intervenor complaint, (2) that he filed that complaint, and (3) that it was a sham. Id. at 6. Weinberg represents to this Court that he neither "adopts or concedes any of these characterizations", claiming instead that they are "unfounded without any evidence to their substance." Id. Not a denial either. To be sure, "[t]he absence of evidence is not evidence of absence," Alston v. Intl. Assn. of Firefighters, Loc. 950, 998 F.3d 11, 29 (1st Cir. 2021), and MIT's deductions are not without foundation based upon the timing and nature of the filings, if nothing else. Nevertheless, the Court need not and does not reach these issues here. It does observe, however, that Weinberg's unorthodox procedural maneuvering, timing, and lack of transparency are troubling.

property derive from his ownership of that intellectual property -- ownership no longer plausibly pleaded in his individual capacity. Where Weinberg alleges that MicroBiogenix is an "assignee" of his rights in the Intellectual Property at issue, the Intellectual Property claims here fail as matter of law.

Accordingly, as to the MIT Defendants, Count I (Misappropriation of Trade Secrets under the Massachusetts Uniform Trade Secrets Act, Mass. Gen. Laws. ch. 93, §§ 42-42G, and Defend Trade Secrets Act, 18 U.S.C. § 1836); Count III (Conversion); Count IV (Unjust Enrichment); Count V (Breach of the Implied Warranty of Good Faith and Fair Dealing); Count VI (Breach of Confidence); Count VII (Declaratory Judgment -- Ownership of Research and Intellectual Property); and Count VIII (Accounting) are DISMISSED under the two-dismissal rule and, in the alternative, for failure to plausibly plead his claims.

The other MIT Claims, Count XV for defamation, libel, and slander, are barred by the two dismissal rule. Count XVI for tortious interference with contractual relations and prospective advantage is barred by the two dismissal rule, and the alternative ground above.

## III. CONCLUSION

Weinberg's latest action against the MIT Defendants, with the exception of a patent naming claim that is premature, is barred by the two dismissal rule, or alternatively he has pled himself out of certain claims. For the aforementioned reasons, the MIT Defendants' Motion to Dismiss, ECF No. 10, is hereby ALLOWED, and the action is DISMISSED as follows: Counts I, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI are each DISMISSED WITH PREJUDICE as to the MIT Defendants. Count II is DISMISSED WITHOUT PREJUDICE as to the MIT Defendants. Count IV is DISMISSED as to SFARI and CHDI for the same reasons as the MIT Defendants.

**SO ORDERED.**

William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[14]

[14] This is how my predecessor, Peleg Sprague (D. Mass 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 48 years.